

FILED

2007 AUG -1  PM 3: 38

CLERK U.S.
WESTERN DISTRICT OF TEXAS
BY_____
DEPUTY

## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF TEXAS

## EL PASO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § <br> § <br> Plaintiff, § <br> § <br> v. § <br> § <br> OMNI CONSORTIUM, INC, § <br> MULTICULTURAL PROFESSIONALS, § <br> MULTICULTURAL EDUCATION § <br>    CONSULTANTS, § <br> FLORITA CEDRO TOLENTINO, § <br> NOEL CEDRO TOLENTINO, and § <br> ANGELICA TOLENTINO, § <br> § <br>    Defendants. § | **SECOND** <br> **SUPERCEDING INDICTMENT** <br><br> **Cause No. EP-04-CR-2091-KC** <br><br> **VIOLATIONS:** <br> **CT 1: 18 USC § 371** <br>     **(Conspiracy to Defraud the** <br>     **Government/Visa Fraud)** <br> **CTS 2-6: 18 USC § 1546** <br>     **(Visa Fraud)** <br> **CT 7: 18 USC § 1519** <br>     **(Destruction of Records)** <br> **CT 8: 18 USC § 4** <br>     **(Misprison of a Felony)** <br> **CTS 9-19: 18 USC § 1957** <br>     **(Money Laundering)** <br> **Notice of Forfeiture** |

THE GRAND JURY CHARGES:

## INTRODUCTION

### I. The Defendants

At all times relevant to this superceding indictment:

1. Defendant OMNI CONSORTIUM, INC was a Texas corporation doing business within the Western District of Texas.

2. Defendant MULTICULTURAL PROFESSIONALS, was a Texas limited liability corporation doing business within the Western District of Texas.

3. Defendant MULTICULTURAL EDUCATIONAL CONSULTANTS operated in the Philippines and acted as an "alter ego" of defendants OMNI CONSORTIUM, INC, MULTICULTURAL PROFESSIONALS, FLORITA TOLENTINO, NOEL TOLENTINO and ANGELICA TOLENTINO.

4. Defendant FLORITA CEDRO TOLENTINO was a principal of and exercised control over OMNI CONSORTIUM, INC, and MULTICULTURAL PROFESSIONALS and also exercised control MULTICULTURAL EDUCATIONAL CONSULTANTS.

5. Defendant NOEL CEDRO TOLENTINO was associated with OMNI CONSORTIUM, INC, MULTICULTURAL PROFESSIONALS and MULTICULTURAL EDUCATION CONSULTANTS and exercised control over said entities.

6. Defendant ANGELICA TOLENTINO acted as a manager of OMNI CONSORTIUM, INC and MULTICULTURAL PROFESSIONALS and managed their day-to-day activities.

II.  **The Process of Acquiring an H-1B Nonimmigrant Visa For An Alien Outside The United States**

7.  Three federal agencies are involved in the process relating to H-1B nonimmigrant classification approval and issuance of the H-1B visas:

(a) The Department of Labor (DOL) administers the labor condition application (LCA) process under which an employer must certify the necessity of hiring foreign labor to DOL;

(b) The Department of Homeland Security (DHS) through Citizenship and Immigration Services (CIS) [formerly Immigration & Naturalization Service (INS)] is responsible for accepting the employer's petition for approval of the nonimmigrant's H-1B visa classification (Form I-129 Petition). If the H-1B classification is approved, CIS will issue a notice of approval of that classification (Form I-797, Notice of Action). The approval of an I-129 petition by the Department of Homeland Security does not establish that the alien is eligible to receive a nonimmigrant visa.  If the petition is

approved, DHS will then notify the Department of State ("DOS") for a determination by DOS of H-1B visa eligibility; and

(c)   The Department of State, through its Embassies and Consulates, is responsible for determining eligibility for the H-1B visa and issuing the H-1B visa if all requirements are met.  An alien must submit his proof he or she is not excludable and the alien, at the time of application for the H-1B visa, still is eligible on the basis of the applicant's employment in the United States.

8.   The final step in the H-1B visa process requires the alien to present himself or herself at a port of entry to request entrance under the visa.  The issuance of a H-1B visa is not an automatic admission to the United States; it only enables the alien to present themself at the port of entry for inspection and to prove his or her right to admission. By the terms of the H-1B classification and visa, a foreign national can remain in the United States legally only as long as the "employer/employee" relationship continues to exist.

9.   A lawful and valid H-1B employee is given only 10 days upon entering the United States to report to his or her petitioner and commence work.  Upon termination of employment, the employee is given 10 days to depart the country.

## COUNT ONE
**(18 U.S.C. § 371 -- Conspiracy to Defraud the Government/Visa Fraud)**

Beginning on or about July 8, 2002, and continuing to on or about April 28, 2005, in the Western District of Texas, the Southern District of Texas, and within the special extraterritorial jurisdiction of the United States, and elsewhere, defendants,

**OMNI CONSORTIUM, INC,**
**MULTICULTURAL PROFESSIONALS,**
**MULTICULTURAL EDUCATION CONSULTANTS,**
**FLORITA CEDRO TOLENTINO,**

Page 3 of  26

**NOEL CEDRO TOLENTINO**
**ANGELICA TOLENTINO**

knowingly conspired, combined, confederated and agreed together and with each other,

and with others known, but not indicted herein, and others unknown to the Grand Jury,

to:

(1) defraud the United States and agencies thereof, to wit: the United

States Department of Homeland Security and the United States Department

of State; and

(2) to utter and obtain visas, permits and other documents prescribed by

statute and regulation for entry into and as evidence of authorized stay and

employment in the United States, knowing it to have been procured by

means of false claim and statement and otherwise procured by fraud, in

violation of Title 18, United State Code, section 1546.

## MANNER AND MEANS OF THE CONSPIRACY

1.     The Grand Jury incorporates by reference and realleges the allegations of

the Introduction as though fully set forth herein.

It was part of the conspiracy that:

2. Defendants developed a scheme by which they would assist alien teachers to

acquire H1-B visas knowing said alien teachers (1) had prior offers of employment

rescinded, and/or (2) who had no confirmed teaching position with a specific employer,

in order to bring such alien teachers to the United States for defendants' financial gain.

3.  As part of the scheme, defendants presented, and induced others acting on

behalf and at the direction of defendants, to present false documents and make false statements before the United States Department of State and CIS in order to secure the visas.

4. The alien teachers were then transported to the United States by defendants, or others acting on behalf and at the direction of defendants, on such H1-B visas. However, the alien teachers did not report to or commence employment with the petitioning employer.

5. When and if a new teaching position for an alien teacher was obtained, defendants would submit, or cause to be submitted, immigration forms seeking to secure a H1-B classification and/or visa for the alien teacher reflecting such new employment.

6. When questioned by CIS why certain alien teachers did not work for the original employer, defendants presented and induced others to present false documents and make false statements before the United States Department of State and CIS in order to conceal the initial fraud.

## OVERT ACTS IN FURTHERANCE OF THE CONSPIRACY

In furtherance of the conspiracy and to effect the objectives thereof, within the Western District of Texas and elsewhere, the defendants, together with others known and unknown to the Grand Jury, committed and caused to be committed the following overt acts:

## BROWNSVILLE INDEPENDENT SCHOOL DISTRICT (BISD)
## BROWNSVILLE, TEXAS

**Overt Act  1:**  On or about December 13, 2001, Brownsville Independent School District (BISD), at the request of FLORITA CEDRO TOLENTINO and NOEL CEDRO TOLENTINO, mailed correspondence to OMNI CONSORTIUM, INC containing a "job order" for one hundred (100) teachers for the 2002-2003 school year, which number represented the total teaching vacancies within BISD at that time.

**Overt Act 2:**  Between on or about January 18, 2002 and February 2, 2002, OMNI CONSORTIUM, INC and MULTICULTURAL PROFESSIONALS, LLC sponsored a trip to the Philippines for four (4) representatives of BISD to interview prospective teacher candidates.   Approximately fifty-five (55) teachers were recruited as candidates for employment at BISD at the completion of the interviews.

**Overt Act 3 :**   On or about February 5, 2002, OMNI CONSORTIUM, INC employees, at the direction of FLORITA CEDRO TOLENTINO and NOEL CEDRO TOLENTINO, prepared and submitted Form I-129 Petitions for the fifty-five (55) alien teachers recruited by BISD. Based on these documents, H-1B classifications for fifty-four (54) teachers were approved and  Form I-797s was issued for each.

**Overt Act 4 :**  On or about March 19, 2002, an OMNI CONSORTIUM, INC employee sent correspondence on behalf of FLORITA CEDRO TOLENTINO to BISD stating that teachers recruited by BISD for the 2002-2003 school year would leave the Philippines only upon confirmation of specific employment at BISD.

**Overt Act 5:**   On or about July 9, 2002, after learning BISD would only hire sixteen (16) alien teachers, FLORITA CEDRO TOLENTINO instructed MULTICULTURAL EDUCATIONAL CONSULTANTS' employees to create BISD contracts for the approximately thirty-eight (38) BISD teachers not hired ("displaced BISD teachers").   FLORITA CEDRO TOLENTINO instructed the employees to use a supplied BISD contract and insert the name of a teacher who had not been hired.

**Overt Act 6:**   On or about July 11, 2002, FLORITA CEDRO TOLENTINO and others acting at her direction, caused the displaced BISD teachers to sign what they believed were contracts with BISD, which were, in fact, the contracts created by persons at MULTICULTURAL EDUCATIONAL CONSULTANTS.

**Overt Act 7:** Beginning on or about July 22, 2002 and continuing through on or about July 29, 2002, FLORITA CEDRO TOLENTINO and MULTICULTURAL EDUCATIONAL CONSULTANTS, forwarded and caused to be forwarded the fraudulent contracts created by MULTICULTURAL EDUCATIONAL CONSULTANTS to the United States Embassy in Manila, along with the teachers' passports, photographs and I-797 classification approvals in order to obtain H-1B visas for teachers which did not have jobs at BISD.

**Overt Act 8:** On or about August 3, 2002, FLORITA CEDRO TOLENTINO and others acting at her direction, caused the displaced BISD teachers to enter the United States and travel to Houston, Texas utilizing the visas acquired through presentation of the fraudulently created contracts.

**Overt Act  9**:  On or about June 19, 2003, FLORITA CEDRO TOLENTINO, OMNI CONSORTIUM, INC and/or MULTICULTURAL PROFESSIONALS, caused three (3) responses to CIS' Requests for Additional Information to be sent to CIS which stated BISD failed to notify anyone of their decision not to employ said teachers until after the visas had been issued and the teachers had arrived in the United States.

### THE YSLETA INDEPENDENT SCHOOL DISTRICT (YISD) EL PASO, TEXAS

**Overt Act  10**: On or about July 2002, defendant NOEL CEDRO TOLENTINO told YISD administrators his teacher program included a "no cost to the district guarantee" and his company, OMNI CONSORTIUM, INC would take care of all the immigration paperwork associated with bringing teachers to the United States.

**Overt Act  11 :**   On or about October 2002, at the request of NOEL CEDRO TOLENTINO, a YISD administrator provided NOEL CEDRO TOLENTINO a "job order" for sixty (60) teachers, which represented all existing vacancies for YISD at the time plus estimated vacancies for the 2003-2004 school year.

**Overt Act  12**: On or about October 2002, NOEL CEDRO TOLENTINO told a YISD administrator that OMNI CONSORTIUM, INC required interviewing or recruiting school districts to petition for ten (10) teachers for every one administrator who went on a free recruiting trip.

**Overt Act  13 :**   On or about November 14, 2002, NOEL CEDRO TOLENTINO traveled with four (4) YISD administrators to the Philippines.

**Overt Act 14:**   Between on or about November 14, 2002 and November 24, 2002, the YISD recruiting team conducted interviews in the Philippines and Hong Kong, China, and issued letters of intent to employ as supplied and requested by NOEL CEDRO TOLENTINO, to approximately fifty-three (53) teachers.

**Overt Act 15:** Beginning on or about January 9, 2003, OMNI CONSORTIUM, INC and MULTICULTURAL PROFESSIONALS, LLC employees, at the direction of FLORITA CEDRO TOLENTINO, NOEL CEDRO TOLENTINO and ANGELICA TOLENTINO, prepared and submitted Form I-129 Petitions to CIS for the alien teachers recruited by YISD.

**Overt Act 16:**   On or about April 24, 2003, FLORITA CEDRO TOLENTINO and NOEL CEDRO TOLENTINO met with YISD officials and were informed that YISD did not want all fifty-three (53) alien teachers, and that YISD did not want the alien teachers making permanent and irrevocable plans which included quitting jobs and coming to the United States without confirmed employment. NOEL CEDRO TOLENTINO assured the YISD administrators he would wait for employment confirmation from YISD before taking the final steps to bring teachers to the United States.

**Overt Act 17:** Beginning on or about May 6, 2003 and continuing through June 10, 2003, OMNI CONSORTIUM, INC and MULTICULTURAL PROFESSIONALS employees, acting at the direction of NOEL CEDRO TOLENTINO, filed approximately seventeen (17) original I-129 Petitions with CIS for YISD teachers and requested expedited processing of those which already had been filed.

**Overt Act  18**: Beginning on or about May 30, 2003, and continuing until on or about August 5, 2003, defendants OMNI CONSORTIUM, INC., MULTICULTURAL PROFESSIONALS, MULTICULTURAL EDUCATIONAL CONSULTANTS and others working at the direction of defendants, caused alien teachers to apply for H1-B visas at the United States Embassy in Manila, Philippines, utilizing the Form I-797s issued for YISD-sponsored petitions filed or expedited after April 24, 2003.

**Overt Act  19**:   On or about July 14, 2003, NOEL CEDRO TOLENTINO learned from YISD administrators that YISD intended to hire only two (2) Filipino teachers, which resulted in the remainder of the teachers becoming displaced (the "displaced YISD teachers").

**Overt Act  20**: On or about July 15, 2003, NOEL CEDRO TOLENTINO spoke with a YISD administrator and confirmed he understood only two teachers would be hired.  NOEL CEDRO TOLENTINO further stated none of the teachers had left the Philippines yet and would not leave the Philippines if they did not have a job at YISD.

**Overt Act  21**:  On or about July 20, 2003, defendants caused approximately twenty-nine (29) displaced YISD teachers to enter the United States and travel to McAllen, Texas on YISD-sponsored H-1B non-immigrant visas.

**Overt Act  22**:   On or about July 31, 2003, defendants caused approximately fourteen (14) displaced YISD teachers to enter the United States and travel to McAllen, Texas on YISD sponsored H-1B non-immigrant visas.

**Overt Act  23 **:  On or about April 1, 2004, OMNI CONSORTIUM, INC and

FLORITA CEDRO TOLENTINO, caused to be sent to CIS a response to a Request for Additional Information in which it was represented that YISD did not notify anyone of the decision not to employ certain teachers until after the teachers arrived in the United States.

## THE SOCORRO INDEPENDENT SCHOOL DISTRICT (SISD)
## EL PASO, TEXAS

**Overt Act 24:** On or about October 2002, NOEL CEDRO TOLENTINO met with SISD administrators to discuss OMNI CONSORTIUM, INC's teacher recruitment program. NOEL CEDRO TOLENTINO asked SISD to commit to hiring 100 teachers from the Philippines. NOEL CEDRO TOLENTINO told the administrators that he and his company, OMNI CONSORTIUM, INC, would pay all expenses of the recruiting trip.

**Overt Act 25:** On or about November 21, 2002, at the request of FLORITA CEDRO TOLENTINO and NOEL CEDRO TOLENTINO, a SISD administrator sent correspondence to FLORITA CEDRO TOLENTINO, which included a "job order" for teachers.

**Overt Act 26:** On or before November 29, 2002, NOEL CEDRO TOLENTINO supplied the SISD recruiting team a form for a letter of intent to be used for teachers selected during their recruiting trip to the Philippines.

**Overt Act 27 :** On or about January 26, 2003, at the direction of FLORITA CEDRO TOLENTINO, NOEL CEDRO TOLENTINO and ANGELICA TOLENTINO, OMNI CONSORTIUM, INC and MULTICULTURAL PROFESSIONALS, LLC

employees prepared and submitted Form I-129 Petitions for twenty-six (26) alien

teachers selected by SISD during their recruiting trip to the Philippines.

**Overt Act  28:**   On or about February 18, 2003, an OMNI CONSORTIUM, INC

employee  sent  correspondence  to  SISD  confirming  the  travel  of  SISD

administrators  to  the  Philippines  in  March  2003,  for  the  purpose  of  recruiting

teachers.

**Overt Act  29:**  On or about March 3, 2003, at the request of FLORITA CEDRO

TOLENTINO  and  NOEL  CEDRO  TOLENTINO,  a  SISD  administrator  sent

correspondence to FLORITA CEDRO TOLENTINO, which included a "job order" for

teachers for the 2003-2004 school year.

**Overt Act  30:**  Beginning on or about March 16, 2003, OMNI CONSORTIUM, INC

and  MULTICULTURAL  PROFESSIONALS, LLC  employees,  at  the  direction  of

FLORITA  CEDRO  TOLENTINO,  NOEL  CEDRO  TOLENTINO  and  ANGELICA

TOLENTINO, prepared and submitted Form I-129 Petitions for forty-two (42) alien

teachers selected by SISD during their March recruiting trip.

**Overt Act  31:**  On or about April 16, 2003, NOEL CEDRO TOLENTINO, after

learning SISD would not hire any teachers, stated to an SISD administrator he

would cancel all teachers previously recruited who had not yet reported to SISD.

**Overt Act  32:**  Beginning April 24, 2003 and continuing until at least June 4,

2003,  employees  of  OMNI  CONSORTIUM,  INC  and  MULTICULTURAL

PROFESSIONALS,  acting  under  the  direction  of  defendant  NOEL  CEDRO

TOLENTINO, continued to file original Form I-129 Petitions with CIS on behalf of

SISD displaced teachers and sought expedited processing on other, previously filed, I-129 Petitions for displaced SISD teachers.

**Overt Act 33**: On or about April 25, 2003, defendant NOEL CEDRO TOLENTINO delivered or caused to be delivered a letter to SISD confirming the conversation concerning no more teachers were to be hired and that OMNI CONSORTIUM, INC understood SISD's need to hire locally.

**Overt Act 34** :  On or after May 6, 2003, employees of MULTICULTURAL EDUCATIONAL CONSULTANTS, acting at the direction of defendant FLORITA CEDRO TOLENTINO, manufactured contracts for the SISD displaced teachers to be presented to the United States Embassy in order to secure H1-B visas.

**Overt Act 35**: Beginning on or about May 29, 2003 and continuing to on or about July 15, 2003, FLORITA CEDRO TOLENTINO, OMNI CONSORTIUM, INC, and MULTICULTURAL EDUCATIONAL CONSULTANTS, and others acting under their direction, caused SISD displaced teachers to appear for interviews at the United States Embassy in Manila, Philippines.   During their interviews, the teachers presented the contracts prepared by MULTICULTURAL EDUCATIONAL CONSULTANTS referred to in Overt Act 34 in order to obtain H-1B visas.

**Overt Act 36**: On or about June 16, 2003, FLORITA CEDRO TOLENTINO, NOEL CEDRO TOLENTINO,  MULTICULTURAL EDUCATIONAL CONSULTANTS, and others acting under their direction, caused thirty-six (36) displaced SISD teachers to depart the Philippines and enter the United States utilizing H1-B visas acquired through the SISD contracts manufactured by MULTICULTURAL EDUCATIONAL

CONSULTANTS.

**Overt Act 37:** Beginning on or about June 19, 2003 and continuing to July 15, 2003, FLORITA CEDRO TOLENTINO, OMNI CONSORTIUM, INC, and MULTICULTURAL EDUCATIONAL CONSULTANTS, and others acting under their direction, caused an additional fourteen (14) SISD displaced teachers to appear for interviews at the United States Embassy in Manila, Philippines.   During their interviews, the teachers presented the contracts prepared by MULTICULTURAL EDUCATIONAL CONSULTANTS referred to in Overt Act 34 in order to obtain H-1B visas.

**Overt Act 38:**   Between on or about July 19, 2003 and on or about August 1, 2003, FLORITA CEDRO TOLENTINO, NOEL CEDRO TOLENTINO, OMNI CONSORTIUM, INC and MULTICULTURAL EDUCATIONAL CONSULTANTS, and others acting under their direction, caused an additional nineteen (19) SISD displaced teachers to enter the United States utilizing utilizing H1-B visas acquired through the SISD contracts manufactured by MULTICULTURAL EDUCATIONAL CONSULTANTS.

**Overt Act 39 :**  On or about April 1, 2004, OMNI CONSORTIUM, INC, MULTICULTURAL PROFESSIONALS, LLC and FLORITA CEDRO TOLENTINO, or others acting under their direction, caused five (5) responses to be sent to CIS Requests for Additional Information in connection with petitions filed to change employers for SISD displaced teachers which stated SISD failed to notify anyone of the decision not to employ said teachers until after the teachers arrived in the

United States.

## THE EL PASO INDEPENDENT SCHOOL DISTRICT (EPISD)
## EL PASO, TEXAS

**Overt Act 40**: On or about August 2002, NOEL CEDRO TOLENTINO approached

representatives of the El Paso Independent School District (EPISD) about recruiting

teachers from the Philippines to fill vacancies at EPISD.

**Overt Act 41** :    On or about January of 2003, OMNI CONSORTIUM, INC

sponsored a trip for representatives of EPISD to the Philippines to interview

prospective teacher candidates.

**Overt Act 42**: Beginning on or about February 2003, OMNI CONSORTIUM, INC

employees, at the direction of FLORITA CEDRO TOLENTINO, NOEL CEDRO

TOLENTINO and ANGELICA TOLENTINO, prepared and submitted Form I-129

Petitions for thirty-three (33) alien teachers recruited by EPISD.

**Overt Act 43**: Between on or about July 7, 2003 and on or about July 15, 2003,

after receiving notice EPISD had withdrawn offers of employment for three (3) alien

teachers, NOEL CEDRO TOLENTINO, MULTICULTURAL EDUCATIONAL

CONSULTANTS and others acting under their direction, caused the three (3)

displaced EPISD teachers to appear for interviews with the United States Embassy

in Manila, utilizing previously issued but withdrawn contracts, and receive their H1-

B visas based on those documents.

**Overt Act 44** :    On or about August 13, 2003, FLORITA CEDRO TOLENTINO,

NOEL CEDRO TOLENTINO, MULTICULTURAL EDUCATION CONSULTANTS and

others acting at their direction, caused the three (3) displaced EPISD teachers to enter the United States and travel to McAllen Texas on the H-1B visas they acquired.

## THE SOUTH SAN ANTONIO INDEPENDENT SCHOOL DISTRICT (SSAISD) SAN ANTONIO, TEXAS

**Overt Act 45:** On or about January 2003, NOEL CEDRO TOLENTINO, acting on behalf of OMNI CONSORTIUM, INC, approached SSAISD administrators about recruiting teachers from the Philippines. NOEL CEDRO TOLENTINO stressed there would be no cost to the district to recruit and hire the teachers.

**Overt Act 46:** On or about February 2003, NOEL CEDRO TOLENTINO made a presentation to the SSAISD in which he indicated: (1) recruiting teachers through OMNI CONSORTIUM, INC would not cost SSAISD any money; (2) once SSAISD had identified teachers SSAISD might like to hire, OMNI CONSORTIUM, INC would bring them into the United States for final interviews, and (3) there was no obligation to hire the teachers. Defendant NOEL CEDRO TOLENTINO further advised his company, OMNI CONSORTIUM, INC, would handle all immigration paperwork necessary to bring the teachers to the United States.

**Overt Act 47:** On or about April 2003, NOEL CEDRO TOLENTINO, OMNI CONSORTIUM, INC, MULTICULTURAL PROFESSIONALS, LLC and MULTICULTURAL EDUCATIONAL CONSULTANTS arranged for two (2) SSAISD administrators to travel to the Philippines to interview prospective teacher candidates. Approximately twenty-one (21) teachers were selected as candidates

for further interview at SSAISD at the completion of the interviews.

**Overt Act 48**: Beginning on or about April 2003 and continuing through on or about July 2003, OMNI CONSORTIUM, INC employees, at the direction of FLORITA CEDRO TOLENTINO, NOEL CEDRO TOLENTINO and ANGELICA TOLENTINO, prepared and submitted Form I-129 petitions to CIS for the twenty-one (21) alien teachers selected for interviews by SSAISD.

**Overt Act 49**: Between on or about June 6, 2003 and on or about June 26, 2003, acting on instructions from defendant MULTICULTURAL EDUCATION CONSULTANTS and others working under its direction, teachers selected by SSAISD for additional interviews presented themselves to the United States Embassy in Manila, Philippines to secure their visas.

**Overt Act 50**:    On or about August 1, 2003, FLORITA CEDRO TOLENTINO, NOEL CEDRO TOLENTINO, MULTICULTURAL EDUCATIONAL CONSULANTS, and others working under their direction, caused the SSAISD teachers to enter the United States on visas secured based on alleged confirmed employment by SSAISD.

**Overt Act 51** :  On or about April 28, 2005, OMNI CONSORTIUM, INC and FLORITA CEDRO TOLENTINO, caused a response to be sent to CIS in connection with a Request for Additional Information.

All done in violation of Title 18, United States Code, sections 371, 7.

## COUNT TWO
### (18 U.S.C. § 1546/18 U.S.C. § 2, 7 – Visa Fraud/Aiding and Abetting)

Beginning on or about July 8, 2002, and continuing until on or about June 19, 2003 within the extraterritorial jurisdiction of the United States and elsewhere, and which affected the Western District of Texas, defendant,

### FLORITA CEDRO TOLENTINO,

did knowingly utter and obtain, and aid and abet others to obtain, nonimmigrant visas and other documents prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, that is H1-B visas to be utilized by displaced BISD Philippine teachers which defendant knew to be procured by means of a false claim or statement and otherwise procured by fraud and unlawfully obtained, in violation of Title 18, United States Code, Sections 1546(a), 2, 7, 3237, and 3238.

## COUNT THREE
### (18 U.S.C. § 1546/18 U.S.C. § 2 – Visa Fraud/Aiding and Abetting)

Beginning on or about April 24, 2003 and continuing until on or about April 1, 2004, within the extraterritorial jurisdiction of the United States and elsewhere, and which affected the Western District of Texas, defendant,

### FLORITA CEDRO TOLENTINO,

did knowingly utter and obtain, and aid and abet others to obtain, nonimmigrant visas and other documents prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, that is H1-B visas to be used by displaced YISD teachers which the defendant knew to be procured by means of a false claim or statement and otherwise procured by fraud and unlawfully obtained, in violation

of Title 18, United States Code, Sections 1546(a), 2, 7, 3237 and 3238.

## COUNT FOUR
### (18 U.S.C. § 1546/18 U.S.C. §§ 2, 7 – Visa Fraud/Aiding and Abetting)

Beginning on or about April 16, 2003 and continuing until on or about April 1, 2004, within the extraterritorial jurisdiction of the United States and elsewhere, and which affected the Western District of Texas, defendant,

**FLORITA CEDRO TOLENTINO,**

did knowingly utter and obtain, and aid and abet others to obtain, nonimmigrant visas and other documents prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, that is H1-B visas to be used by displaced SISD teachers, which the defendant knew to be procured by means of a false claim or statement and otherwise procured by fraud and unlawfully obtained, in violation of Title 18, United States Code, Sections 1546(a), 2, 7, 3237 and 3238.

## COUNT FIVE
### (18 U.S.C. § 1546/18 U.S.C. §§ 2, 7 – Visa Fraud/Aiding and Abetting)

Beginning on or about June 23, 2003 and continuing until on or about April 13, 2003, within the extraterritorial jurisdiction of the United States and elsewhere, and which affected the Western District of Texas, defendants,

**FLORITA CEDRO TOLENTINO and**
**NOEL CEDRO TOLENTINO,**

did knowingly utter and obtain, and aid and abet each other and others to obtain, nonimmigrant visas and other documents prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, that is H1-B visas

to be used by displaced EPISD teachers, which the defendants knew to be procured by means of a false claim or statement and otherwise procured by fraud and unlawfully obtained, in violation of Title 18, United States Code, Sections 1546(a), 2, 7, 3237 and 3238.

### COUNT SIX
**(18 U.S.C. § 1546/18 U.S.C. §§ 2, 7 – Visa Fraud/Aiding and Abetting)**

Beginning on or about January 23, 2003 and continuing until on or about April 28, 2005, within the extraterritorial jurisdiction of the United States and elsewhere, and which affected the Western District of Texas, defendants,

**FLORITA CEDRO TOLENTINO and**
**NOEL CEDRO TOLENTINO,**

did knowingly utter and obtain, and aid and abet each other and others to obtain, nonimmigrant visas and other documents prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, that is H1-B visas to be used by displaced SSAISD teachers, which the defendant knew to be procured by means of a false claim or statement and otherwise procured by fraud and unlawfully obtained, in violation of Title 18, United States Code, Sections 1546(a), 2, 7, 3237 and 3238.

### COUNT SEVEN
**(18 U.S.C. § 1519 - Destruction of Records in Federal Investigation)**

Beginning on or about August 26, 2003 and continuing until on or about May 24, 2006, in the Philippines and elsewhere, defendants,

**OMNI CONSORTIUM, INC,**
**MULTICULTURAL PROFESSIONALS,**

**MULTICULTURAL EDUCATION CONSULTANTS,**
**FLORITA CEDRO TOLENTINO, and**
**ANGELICA TOLENTINO,**

aided and abetted by each other, did knowingly alter, destroy, mutilate and conceal records and documents with the intent to impede, obstruct and influence an investigation occurring in the Western District of Texas of a matter within the jurisdiction of a department and agency of the United States, to wit: the Department of Homeland Security and the Federal Bureau of Investigation, in violation of Title 18, United States Code, sections 1519 and 3238.

### COUNT EIGHT
### (18 U.S.C. § 4 - Misprison of a Felony)

Beginning on or about July 8, 2002, continuing to and including on or about the date of this Superceding Indictment, in the Western District of Texas and elsewhere, defendant,

**ANGELICA TOLENTINO,**

having knowledge of the actual commission of a felony cognizable by a court of the United States, to-wit: Visa Fraud, affirmatively acted to conceal the same and did not as soon as possible make known the same to a judge or other person in civil or military authority under the United States in violation of Title 18, United States Code, section 4.

### COUNTS NINE THROUGH NINETEEN
### (18 U.S.C. § 1957 - Money Laundering)

On or about the dates specified below, in the Western District of Texas and elsewhere, defendants,

**OMNI CONSORTIUM, INC,**
**MULTICULTURAL PROFESSIONALS,**
**MULTICULTURAL EDUCATION CONSULTANTS,**
**FLORITA CEDRO TOLENTINO,**
**NOEL CEDRO TOLENTINO, and**
**ANGELICA TOLENTINO,**

aided and abetted by each other, did knowingly engage and attempt to engage in a monetary transaction by, through and to a financial institution, affecting interstate or foreign commerce, in criminally derived property of a value greater than $10,000, as is specified below, such property having been derived from a specified unlawful activity, that is alien smuggling and visa fraud, to wit:

| COUNT | DATE | AMOUNT | DEPOSITED TO |
|---|---|---|---|
| NINE | June 11, 2003 | $18,000 | Omni account at Wells Fargo Bank |
| TEN | July 14, 2003 | $39,000 | Omni account at Wells Fargo Bank |
| ELEVEN | July 22, 2003 | $69,140 | Omni account at Wells Fargo Bank |
| TWELVE | July 23, 2003 | $67,230 | Omni account at Wells Fargo Bank |
| THIRTEEN | July 24, 2003 | $39,000 | Omni account at Wells Fargo Bank |
| FOURTEEN | July 28, 2003 | $14,570 | Omni account at Wells Fargo |
| FIFTEEN | July 31, 2003 | $15,200 | Omni account at Wells Fargo |
| SIXTEEN | August 8, 2003 | $25,410 | Omni account at Wells Fargo |
| SEVENTEEN | August 13, 2003 | $125,500 | Omni account at Wells Fargo |

| EIGHTEEN | August 15, 2003 | $10,420 | Omni account at Wells Fargo |
| NINETEEN | August 26, 2003 | $108,000 | Omni account at Wells Fargo |

## NOTICE OF GOVERNMENT'S DEMAND FOR FORFEITURE

### (18 U.S.C. § 371; 18 U.S.C. §§ 1546, 1957, and 982)

A.   As a result of committing one or more of the offenses alleged in the Indictment, specifically as alleged in Count One (alleging Conspiracy/Visa Fraud), and Counts Two through Six, inclusive (alleging Visa Fraud) defendants,

**OMNI CONSORTIUM, INC.,
MULTICULTURAL PROFESSIONALS,
MULTICULTURAL EDUCATION CONSULTANTS,
FLORITA CEDRO TOLENTINO,
NOEL CEDRO TOLENTINO, and
ANGELICA TOLENTINO,**

shall forfeit to the United States, jointly and severally, pursuant to Title 18, United States Code, section 982 for violations of Title 18, United States Code, section 371 involving a violation of 1546 and Title 18, United States Code, section 1546, any conveyance, including and vessel, vehicle, or aircraft used in the commission of the offense or which the person is convicted; and property real or personal that constitutes, or is derived from or is traceable to the proceeds obtained directly or indirectly from the commission of the offense of which the  person is convicted; or that is used to facilitate, or is intended to be used to facilitate, the commission of the offense of which the person is convicted including but not limited to the following:

1. All vehicles, including

    a).   1996 Mercedes Benz, VIN: WDBJF55F4TJ006443
    b).   1999 BMW, VIN: WBAGH8335XDP05937
    c).   Chevrolet Suburban Truck

2. All that lot or parcel of land, together with its building, appurtenance, improvements, fixtures, attachments and easements, located at 708 Kuhlman, Houston, Texas, also known as, Lot Ten (10), Block D, in Memorial Oaks, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded in Volume 17, Page 47 of the Map Records of Harris County, Texas.

3. All that lot or parcel of land, together with its building, appurtenance, improvements, fixtures, attachments and easements, located at 1117 Zinnia Avenue, McAllen, Texas, also known as Lot 105, T.H.E. Enterprise subdivision, Unit No. 4, an addition to the City of McAllen, Hidalgo County, Texas, according to the map recorded in Volume 19, Page 88, of the Map Records in the office of the County Clerk of Hidalgo County, Texas.

4. All United States currency funds or other monetary instruments credited to bank accounts which funds are traceable to the proceeds received, including but not limited to:

    a).   Wells Fargo Bank, Account Number 8982045604, and any successor accounts;
    b).   Bank One, Account Number 637614406
    c).   Bank of America, Account Number 5776799242
    d).   Bank of America, Account Number 4798832764
    e).   United Central Bank, Account Number 2506392

5. $2,700,000.00 Personal Money Judgment

B. As a result of committing one of the offenses alleged in this Indictment, specifically as alleged in Counts Nine through Nineteen (alleging Money Laundering), defendants,

**OMNI CONSORTIUM, INC.,**
**MULTICULTURAL PROFESSIONALS,**
**MULTICULTURAL EDUCATION CONSULTANTS,**

]

**FLORITA CEDRO TOLENTINO,**
**NOEL CEDRO TOLENTINO, and**
**ANGELICA TOLENTINO,**

shall forfeit to the United States, jointly and severally, pursuant to Title 18, United States

Code, section 982, for violations of Title 18, United States Code, section 1957 , any

property, real or personal, involved in such offense, or any property traceable to such

property including but not limited to the following.

　　1. All vehicles, including

　　　　a). 1996 Mercedes Benz, VIN: WDBJF55F4TJ006443
　　　　b). 1999 BMW, VIN: WBAGH8335XDP05937
　　　　c). Chevrolet Suburban Truck

　　2. All that lot or parcel of land, together with its building, appurtenance, improvements, fixtures, attachments and easements, located at 708 Kuhlman, Houston, Texas, also known as, Lot Ten (10), Block D, in Memorial Oaks, a subdivision in Harris County, Texas, according to the map or plat thereof, recorded in Volume 17, Page 47 of the Map Records of Harris County, Texas.

　　3. All that lot or parcel of land, together with its building, appurtenance, improvements, fixtures, attachments and easements, located at 1117 Zinnia Avenue, McAllen, Texas, also known as Lot 105, T.H.E. Enterprise subdivision, Unit No. 4, an addition to the City of McAllen, Hidalgo County, Texas, according to the map recorded in Volume 19, Page 88, of the Map Records in the office of the County Clerk of Hidalgo County, Texas.

　　4. All United States currency funds or other monetary instruments credited to bank accounts which funds are traceable to the proceeds received, including but not limited to:

　　　　a). Wells Fargo Bank, Account Number 8982045604, and any successor accounts;
　　　　b). Bank One, Account Number 637614406
　　　　c). Bank of America, Account Number 5776799242
　　　　d). Bank of America, Account Number 4798832764
　　　　e). United Central Bank, Account Number 2506392

5.  $2,700,000.00 Personal Money Judgment

## FORFEITURE OF SUBSTITUTE ASSETS

B.  If any property subject to forfeiture as a result of the offenses set forth in the

Indictment.

    (1)    cannot be located upon the exercise of due diligence;
    (2)    has been transferred or sold to, or deposited with, a third person;
    (3)    has been placed beyond the jurisdiction of the Court;
    (4)    has been substantially diminished in value; or
    (5)    has been commingled with other property which cannot be subdivided without difficulty;

as a result of any act or omission of the defendants,  it is the intent of the United States

of America, to seek forfeiture of any other property of said defendants, up to the value

of the above property listed as being subject to forfeiture.


A TRUE BILL


_____
Foreperson


JOHNNY SUTTON
UNITED STATES ATTORNEY


BY: _____
Assistant United States Attorney