1          IN THE UNITED STATES DISTRICT COURT

2              WESTERN DISTRICT OF TEXAS

3                  EL PASO DIVISION

4

5   UNITED STATES OF AMERICA              No. EP:04-CR-2091-KC

6   v.                                    El Paso, Texas

7   NOEL CEDRO TOLENTINO                  January 2, 2008

8

9

10                     PLEA OF GUILTY

11          BEFORE THE HONORABLE KATHLEEN CARDONE

12               UNITED STATES DISTRICT JUDGE

13

14

15  APPEARANCES:

16  For the Government:  William F. Lewis, Jr.
                        J. Brandy Gardes
17                      United States Attorney's Office
                        700 East San Antonio, Suite 200
18                      El Paso, Texas 79901

19

20  For the Defendant:   Ray Velarde
                        1216 Montana Avenue
                        El Paso, Texas 79902
21

22

23

24      Proceedings recorded by stenotype.  Transcript produced by

25  computer-aided transcription.

David A. Perez, CSR, RPR

1          THE CLERK:  Court is back in session.

2          THE COURT:  You may be seated.

3          THE CLERK:  EP:04-CR-2091, USA versus Florita Cedro

4    Tolentino, Noel Cedro Tolentino and Angelica Tolentino.

5          MS. GARDES:  Good afternoon, Your Honor.  Brandy

6    Gardes and Bill Lewis on behalf of the United States.

7          MR. ABRAHAM:  Good afternoon, Sib Abraham for Florita

8    Tolentino.

9          MR. VELARDE:  Good afternoon, Judge Cardone.  Ray

10   Velarde on behalf of Noel Cedro Tolentino.  We're ready for a

11   plea.

12         MR. ISLAS:  Good afternoon, Judge.  Luis Islas for

13   Angelica Tolentino, who's present.  But I understand if this

14   plea goes through, that the indictment will be dismissed

15   against Angelica.

16         MS. GARDES:  That is true, conditioned on Ms. Angelica

17   signing an; affidavit of waiver of contesting the forfeiture in

18   the case which has been given to Mr. Islas.

19         MR. ISLAS:  We have it.

20         MS. GARDES:  It has to be done in front of a notary.

21   We assume that we will get that one.

22         THE COURT:  We're ready to proceed?

23         MR. ABRAHAM:  Yes.

24         THE COURT:  You are Florita Cedro Tolentino?

25         DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

1          THE COURT:  My understanding is that you are here

2     today to enter a plea to the offense of conspiracy to defraud

3     the United States Government; is that correct?

4          DEFENDANT FLORITA TOLENTINO:  Yes, Judge.

5          THE COURT:  And you are Noel Cedro Tolentino?

6          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

7          THE COURT:  And, Mr. Tolentino, it's my understanding

8     you are here today to enter a plea to the count of conspiracy

9     to defraud the United States; is that correct?

10          DEFENDANT NOEL TOLENTINO:  Yes, it is.

11          THE COURT:  All right.  Swear them in.

12          (Defendants sworn.)

13          THE COURT:  I'm going to ask each of you to do a

14     couple of things.  First of all, as we go through the plea, I

15     will be explaining to you a number of things and asking you

16     some questions.  If at any point I say something that you don't

17     understand, that you need me to restate to clarify it for you,

18     please let me know that and I will be happy to explain or

19     clarify anything that you don't understand.

20          Do you understand that, Ms. Tolentino?

21          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

22          THE COURT:  And, Mr. Tolentino?

23          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

24          THE COURT:  As we go through the plea, if you have a

25     question about something, something you want to talk over with

1    your attorney, and you need a moment to discuss something with

2    your attorney, please let me know that, I will be happy to take

3    a short break for either one of you if you want to ask or

4    discuss something with your lawyer.

5          Do you understand that, Ms. Tolentino?

6          DEFENDANT FLORITA TOLENTINO:  Yes, Judge.

7          THE COURT:  And, Mr. Tolentino?

8          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

9          THE COURT:  And, finally, as we go through the plea,

10   there will be a number of questions I will be asking each of

11   you.  There are no right or wrong answers to those questions.

12   You have each taken an oath to tell the truth.  I expect each

13   of to you listen to the question and answer the question

14   truthfully as it applies to you.  In other words, just because

15   I'm doing these pleas together, that doesn't mean that you're

16   not two separate individuals and that you might not have two

17   separate answers to a question.  So listen to the question and

18   answer the question truthfully.

19         Do you understand that, Ms. Tolentino?

20         DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

21         THE COURT:  And, Mr. Tolentino?

22         DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

23         THE COURT:  So the first thing is that you don't have

24   to plead guilty here this afternoon.  If you believe you are

25   innocent of these charges, you should not be entering a plea of

1    guilty.

2           Do you understand that, Ms. Tolentino?

3           DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

4           THE COURT:  Mr. Tolentino?

5           DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

6           THE COURT:  If you believe you have a defense to these

7    charges, and you would like to go to trial, you are absolutely

8    entitled to a trial, either a trial before me as the judge, or

9    a jury trial.  And if you would like to go to trial in this

10   case, you should not be entering a plea of guilty.

11          Do you understand, Ms. Tolentino?

12          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

13          THE COURT:  And, Mr. Tolentino?

14          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

15          THE COURT:  If you walked into the courtroom with the

16   idea of pleading guilty, and for whatever reason you change

17   your mind, you decide you don't want to go through the plea,

18   that's fine with me, if you don't want to plead guilty, you

19   don't have to plead guilty, you should not plead guilty in this

20   case unless that's what you really want to do.

21          And I'm explaining all of that to you because I want

22   you both to understand that once we go through this plea, once

23   I explain all the rights that you have and the consequences of

24   entering in plea, once you actually enter your plea of guilty

25   and we adjourn to come back another day for sentencing, at that

1    point it becomes very difficult to withdraw this plea.  So you

2    should not plead guilty unless that's what you really want to

3    do in your case.

4            Do you both understand that?

5            DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

6            DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

7            THE COURT:  So let me start with you, Ms. Tolentino.

8    Can you please give me your full, true and correct, legal name?

9            DEFENDANT FLORITA TOLENTINO:  Florita Cedro Tolentino.

10           THE COURT:  And, Mr. Tolentino, your full, true and

11   correct, legal name?

12           DEFENDANT NOEL TOLENTINO:  Noel Cedro Tolentino.

13           THE COURT:  And are each of you here today to enter a

14   plea of guilty freely and voluntarily?

15           Ms. Tolentino?

16           DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

17           THE COURT:  And, Mr. Tolentino?

18           DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

19           THE COURT:  Have each of you seen a copy of the second

20   superceding indictment in your case?  And have you had the

21   opportunity to discuss that with your attorney?

22           Ms. Tolentino?

23           DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

24           THE COURT:  And, Mr. Tolentino?

25           DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

1          THE COURT:  Are each of you here today to enter a plea
2  of guilty freely and voluntarily?
3          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.
4          THE COURT:  And, Mr. Tolentino?
5          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.
6          THE COURT:  Do either of you have any complaints about
7  anything your attorney has done or failed to do in representing
8  you in your case?
9          Ms. Tolentino?
10          DEFENDANT FLORITA TOLENTINO:  None, ma'am.
11          THE COURT:  Mr. Tolentino?
12          DEFENDANT NOEL TOLENTINO:  No, ma'am.
13          THE COURT:  Ms. Tolentino, are you in good physical
14  health?
15          DEFENDANT FLORITA TOLENTINO:  In good physical health?
16          THE COURT:  Yes.
17          DEFENDANT FLORITA TOLENTINO:  Not perfect.
18          THE COURT:  All right.  Is there any particular
19  ailment that you suffer from?
20          DEFENDANT FLORITA TOLENTINO:  A heart problem.
21          THE COURT:  All right.  Is there a specific diagnosis?
22          DEFENDANT FLORITA TOLENTINO:  Yes, prolapse of the
23  ventral -- left ventricle part of my heart.
24          THE COURT:  Do you take any medication for that?
25          DEFENDANT FLORITA TOLENTINO:  Yes.

1          THE COURT:  And what kind of medication is that?

2          DEFENDANT FLORITA TOLENTINO:  I forgot the medicine.

3    I forgot.  I forgot the medicine.  Because they give it to me

4    sometimes.  It is the one that is not -- it's the one from

5    Medicare.  I'm sorry, I forgot.

6          THE COURT:  Do you take it every day?

7          DEFENDANT FLORITA TOLENTINO:  Every day, especially

8    when I have palpitations.

9          THE COURT:  Is there anything about that medication

10   that you think affects your ability to think clearly here

11   today?

12         DEFENDANT FLORITA TOLENTINO:  No.

13         THE COURT:  Do you take any other kind of medication?

14         DEFENDANT FLORITA TOLENTINO:  No, that's --

15         THE COURT:  Have you ever been treated or hospitalized

16   for any sort of mental problems?

17         DEFENDANT FLORITA TOLENTINO:  No.

18         THE COURT:  Have you ever been treated for any kind of

19   an addiction?

20         DEFENDANT FLORITA TOLENTINO:  No.

21         THE COURT:  So as you stand here before me,

22   Ms. Tolentino, about ready to enter your plea, are you under

23   the influence of an alcoholic beverage, a narcotic drug, or any

24   medication other than the medication you take for your heart?

25         DEFENDANT FLORITA TOLENTINO:  No.

1          THE COURT:  Mr. Tolentino, are you in good physical

2    health?

3          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

4          THE COURT:  Have you ever been hospitalized or treated

5    by a doctor for any sort of mental problems?

6          DEFENDANT NOEL TOLENTINO:  No, ma'am.

7          THE COURT:  Have you ever been treated for any kind of

8    an addiction?

9          DEFENDANT NOEL TOLENTINO:  No, ma'am.

10          THE COURT:  Are you currently taking any kind of

11    medication?

12          DEFENDANT NOEL TOLENTINO:  Just high blood pressure

13    medicine, lisinopril.

14          THE COURT:  Is there anything about that medication

15    that you think affects your ability to think clearly here

16    today?

17          DEFENDANT NOEL TOLENTINO:  No, ma'am.

18          THE COURT:  So as you stand here before me about ready

19    to enter your plea, are you under the influence of an alcoholic

20    beverage, a narcotic drug, or any medication other than the one

21    you take for high blood pressure?

22          DEFENDANT NOEL TOLENTINO:  No, I'm not.

23          THE COURT:  There are plea agreements in each of your

24    cases.  Have each of you had the opportunity to go over that

25    plea agreement and discuss it with your attorneys before you

1  signed it?

2          Ms. Tolentino?

3          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

4          THE COURT:  Mr. Tolentino?

5          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

6          THE COURT:  Does that agreement contain all of the

7  agreements that you have with the U.S. Attorney's Office?

8          Ms. Tolentino?

9          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

10          THE COURT:  Mr. Tolentino?

11          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

12          THE COURT:  Has anybody made any other or different

13  promise to you to get you to plead guilty here today?

14          Ms. Tolentino?

15          DEFENDANT FLORITA TOLENTINO:  No, ma'am.

16          THE COURT:  Mr. Tolentino?

17          DEFENDANT NOEL TOLENTINO:  No, ma'am.

18          THE COURT:  Now, for each of you there are

19  consequences of entering a plea of guilty to a felony offense.

20          Let me ask you, Ms. Tolentino, are you a citizen of

21  the United States of America?

22          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

23          THE COURT:  Mr. Tolentino, are you a citizen of the

24  United States of America?

25          DEFENDANT NOEL TOLENTINO:  I am not.

1          THE COURT:  For you, Ms. Tolentino, as a citizen of

2   the United States a plea of guilty can affect certain, valuable

3   civil rights that you have.  It can affect your right to sit on

4   a jury.  It can affect your right to vote.  It can affect your

5   right to certain Government employment, to certain Government

6   benefits, to certain Government licenses.  It can affect your

7   right to carry a firearm.  All of those kinds of things can be

8   affected by a plea of guilty here today.

9          Do you understand that?

10          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

11          THE COURT:  For you, Mr. Tolentino, if you are not a

12   citizen of the United States of America, a plea of guilty may

13   result in you being deported, excluded, or denied

14   naturalization under our laws.

15          Do you understand that?

16          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

17          THE COURT:  For both of you by pleading guilty here

18   today, there are certain legal rights that you give up.  We

19   have talked a little bit about the right that each of you have

20   to have a trial.  You are each absolutely entitled to a trial,

21   either a trial before me, as I said, or a jury trial.  As a

22   matter of fact, we're scheduled to pick that jury this Friday.

23   By entering a plea of guilty, each of you give up the right to

24   a trial in this case.  There will no trial for either one of

25   you.

1          Do you understand that, Ms. Tolentino?

2          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

3          THE COURT:  Mr. Tolentino?

4          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

5          THE COURT:  You have the right to remain silent.  That

6     means you have the right to stand here and say absolutely

7     nothing at all regarding this offense.  But by entering a plea

8     of guilty, each of you give up the right to remain silent in

9     your case.

10          Do you understand that, Ms. Tolentino?

11          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

12          THE COURT:  Mr. Tolentino?

13          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

14          THE COURT:  You have the right to confront witnesses.

15     You have the right to have the witnesses who have made these

16     allegations against you brought into the courtroom.  You have

17     the right to hear their testimony and to have your attorneys

18     cross-examine them about what they allege you did in this case.

19     By entering a plea of guilty, each of you give up the right to

20     hear from those witnesses and to have your attorney

21     cross-examine them.

22          Do you understand that, Ms. Tolentino?

23          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

24          THE COURT:  Mr. Tolentino?

25          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

1          THE COURT:  And you have the right to the presumption

2     of innocence.  Under our system of justice, as you stand here

3     today, the law presumes that you are innocent of these charges.

4     But by entering a plea of guilty, you give up the right to that

5     presumption of innocence.

6          Do you understand that, Ms. Tolentino?

7          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

8          THE COURT:  Mr. Tolentino?

9          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

10          THE COURT:  Now, in each of your cases, it is the

11     United States Government who has brought these charges against

12     you.  And, therefore, it becomes their obligation, their burden

13     of proof to prove the case against you, and to prove it beyond

14     a reasonable doubt.  By entering a plea of guilty, you give up

15     the right to require the Government prove its case against you,

16     and that they prove it beyond a reasonable doubt.

17          Do you understand that, Ms. Tolentino?

18          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

19          THE COURT:  And, Mr. Tolentino?

20          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

21          THE COURT:  So I want to go over with you right now

22     what it is the Government would have to prove in each of your

23     cases.  Since each of you are pleading to the offense of

24     conspiracy to defraud the United States, the Government would

25     have to prove, essentially, the same thing in each of your

1  cases.  I will go over it.

2        In each of your cases the Government would have to

3  prove that you, as the defendant, and at least one other person

4  made an agreement to commit the crime of defrauding the United

5  States as charged in your indictment.  The Government would

6  have to prove that you, as the defendant, knew the unlawful

7  purpose of that agreement and joined in it willfully, that is,

8  with the intend to further the unlawful purpose.

9        And, the Government would have to prove that one of

10  the conspirators, during the existence of that conspiracy,

11  knowingly committed at least one of the overt acts described in

12  that indictment in order to accomplish some object or purpose

13  of the conspiracy.

14        Do you understand what the Government would have to

15  prove against you, Ms. Tolentino?

16        THE DEFENDANT:  Yes, ma'am.

17        THE COURT:  And do you understand what the Government

18  would have to prove against you, Mr. Tolentino?

19        DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

20        THE COURT:  And do each of you understand that by

21  pleading guilty here today you give up the right to require

22  that the Government prove all of that against you beyond a

23  reasonable doubt?

24        Ms. Tolentino?

25        DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

1          THE COURT:  And, Mr. Tolentino?

2          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

3          THE COURT:  Now, I want to talk to each of you a

4   little about sentencing.  I'm not going to be sentencing either

5   of you here today.  You will be coming back another day for

6   sentencing.  However, before you enter your plea, I want each

7   of you to understand a little bit about sentencing here in

8   federal court.

9          The first thing I want you both to understand is that

10  the maximum statutory penalty for this offense is up to five

11  years of incarceration, a $250,000 fine, three years supervised

12  release, and a $100 special assessment.

13         Do each of you understand that?

14         DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

15         DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

16         THE COURT:  Now in each of your cases, a probation

17  officer has been assigned.  That probation officer will be

18  preparing a Presentence Investigation Report.  In that report

19  each of you will be placed in what's called a Total Offense

20  Level and a Criminal History Category.

21         The Total Offense Level is based on the offense that

22  you've entered a plea of guilty to.  In other words, the

23  offense of conspiracy to defraud the United States.  The

24  Criminal History Category is based on your particular criminal

25  history.  Then, at the time of sentencing, using what's called

1    the sentencing table -- down the side here is the Total Offense

2    Level, and across the top is the Criminal History Category.

3    Using the information provided by the probation department we

4    go down to your Total Offense Level, across to your Criminal

5    History Category.  Where those two meet is what's called the

6    guideline range of sentence for each of you in your individual

7    cases.

8            Do you understand that?

9            DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

10           DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

11           THE COURT:  Now, I don't have that information in

12   front of me.  And I want to mention to both of you at this

13   point that it is my understanding, having read your plea

14   agreement, that there is actually an agreement -- binding

15   sentencing agreement as part of this plea agreement.  So -- and

16   it is set forth here that part of the binding agreement is that

17   there will be -- the sentence would include three years

18   probation, no fine or restitution, and forfeiture of any and

19   all interest that you have in properties that have been

20   identified in your indictment.

21           Do you understand that that's part of the agreement

22   that you have with the Government?

23           DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

24           DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

25           THE COURT:  And that its a binding agreement, which

1    means that if I don't follow it, that I will allow you to

2    withdraw your guilty pleas.

3            Do you both understand that?

4            DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

5            DEFENDANT NOEL TOLENTINO:  Absolutely.

6            THE COURT:  So what I want to explain to you, however,

7    is that I will still be getting that Presentence Investigation

8    Report.  That report is a report that I use to determine what

9    is a fair and reasonable sentence in your case.

10           If I were not to follow that plea agreement, then I

11   would allow you to withdraw your plea, however.  So the Court

12   has reviewed that.  At this point I don't know for sure whether

13   I will agree or not agree.  But I want you both to understand

14   should I not agree to that sentencing agreement, then I would

15   allow you to withdraw your plea at that time.

16           Do you understand that?

17           DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

18           DEFENDANT NOEL TOLENTINO:  Yes, ma'am, I do.

19           THE COURT:  And that Presentence Investigation Report

20   will be prepared prior to your day of sentencing so that both

21   of you will have the opportunity to review that.

22           Do you understand that, Ms. Tolentino?

23           DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

24           THE COURT:  And, Mr. Tolentino?

25           DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

1        THE COURT:  I also want you to understand that

2   depending on the sentence this Court were to give to you, that

3   there is no such thing as parole in the federal system.  I

4   don't want either of you to enter a plea of guilty here today

5   with the idea that you get to appear in front of a parole board

6   and that somehow a parole board can shorten your term of

7   sentence.  There is no such thing as parole in the federal

8   system.

9        Do you understand that?

10       DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

11       THE COURT:  Mr. Tolentino?

12       DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

13       THE COURT:  Now there is good-time credit.  And what

14  that means for each of you is should either of you get a

15  sentence greater than 12 months, it can be anything greater

16  than 12 months, even 12 months and a day, but should this Court

17  sentence you to a sentence greater than 12 months, then you

18  become eligible to earn good-time credit while you are

19  incarcerated.  Based on your plea agreement that is not

20  contemplated.  But you both need to understand there is no

21  parole in the federal system.

22       Do you understand that?

23       DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

24       DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

25       THE COURT:  And should this Court sentence you to a

1   period of incarceration, once the incarceration was completed,

2   then there would be a term of supervised release.  Supervised

3   release means that although you are no longer incarcerated, you

4   are still under the terms and conditions of this Court.  And

5   you would be under this Court's supervision for a period of

6   years.  As long as you completed these terms and conditions,

7   then, hopefully, you would not be back in this courtroom again.

8   But if you violate a term or condition of your supervised

9   release, you're brought back in front of me, then you could go

10  back to prison for that.  Do you both understand that?

11          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

12          DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

13          THE COURT:  Now since there is a plea agreement in

14  your case, I want each of you to understand by entering into

15  that plea agreement you have limited your rights to appeal.

16  That doesn't mean you can't appeal.  What it means is that you

17  have limited your rights to appeal.  You could still appeal for

18  ineffective assistance of counsel.  You could appeal if there

19  was some sort of prosecutorial misconduct that rose to a

20  Constitutional violation.  But, by entering into a plea

21  agreement in your case, each of you have limited your rights to

22  appeal.

23          Do you understand that, Ms. Tolentino?

24          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

25          THE COURT:  And, Mr. Tolentino?

1    DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

2    THE COURT:  Now, Mr. Abraham, do you have any concerns

3  regarding your client's competency?

4    MR. ABRAHAM:  I do not Your Honor.

5    THE COURT:  Mr. Velarde, any concerns regarding your

6  client's competency?

7    MR. VELARDE:  I have none.

8    THE COURT:  Anything in the Government's file that

9  would raise the issue of competency?

10    MS. GARDES:  We have no such information, Your Honor.

11    THE COURT:  Let me start with you, Ms. Tolentino.  Can

12  you please tell me how old you are?

13    DEFENDANT FLORITA TOLENTINO:  I was born January 22,

14  1935.

15    THE COURT:  Are you -- how far did you go in school?

16    DEFENDANT FLORITA TOLENTINO:  I have a Bachelor of

17  Science in nursing.

18    THE COURT:  Where did you attend -- get your nursing

19  degree?

20    DEFENDANT FLORITA TOLENTINO:  In the Philippines.

21    THE COURT:  Are you married?

22    DEFENDANT FLORITA TOLENTINO:  Yes.

23    THE COURT:  Do you have any children?

24    DEFENDANT FLORITA TOLENTINO:  I have five.

25    THE COURT:  And how old are they?

1          DEFENDANT FLORITA TOLENTINO:  Starting from my eldest

2     one -- I have to count.  There are five of them.

3          THE COURT:  Okay.

4          DEFENDANT FLORITA TOLENTINO:  First child is born

5     1957.  And then Noel, 1960, the second one.  And then the third

6     one was after five years.

7          THE COURT:  65.

8          DEFENDANT FLORITA TOLENTINO:  Yeah.  And the next one

9     was -- I forgot.

10          THE COURT:  Suffice it to say, however, all of your

11     children are adults.

12          DEFENDANT FLORITA TOLENTINO:  Yep.

13          THE COURT:  Are they all here in the United States or

14     different place?

15          DEFENDANT FLORITA TOLENTINO:  All in the United

16     States, in Texas.

17          THE COURT:  Okay.  And how about you, Mr. Tolentino,

18     how old are you?

19          DEFENDANT NOEL TOLENTINO:  47.

20          THE COURT:  How far did you go in school?

21          DEFENDANT NOEL TOLENTINO:  I have a Bachelor's in

22     Business Administration and part credits for Master's -- MBA.

23          THE COURT:  Where did you get your Bachelor's?

24          THE DEFENDANT:  New York University business school.

25          THE COURT:  Okay.  And are you married?

1          DEFENDANT NOEL TOLENTINO:  Yes, I am.

2          THE COURT:  Do you have any children?

3          DEFENDANT NOEL TOLENTINO:  I have two.

4          THE COURT:  How old are they?

5          DEFENDANT NOEL TOLENTINO:  One is 19, a girl.  And the

6    second one is a boy, 14 years old.

7          THE COURT:  Where do they live?

8          DEFENDANT NOEL TOLENTINO:  They live in Houston.  My

9    daughter is in University of Virginia during the year.

10          THE COURT:  But she is till at home.  She's not

11    married.

12          DEFENDANT NOEL TOLENTINO:  She's not married.

13          THE COURT:  Now in just a moment I'm going to have the

14    assistant U.S. Attorney read for me a summary of the evidence

15    in each of your cases.  I assume it will be the same one.  But

16    as she reads the summary that applies to you, I'm going to ask

17    you to listen carefully, because when she's done, I'm going to

18    ask you if there is anything in that summary that you disagree

19    with, that you think is incorrect or inaccurate information.

20    So I need you to listen carefully to the summary.

21          Are you going to read the same one?

22          MS. GARDES:  Both the same.  And because it is rather

23    lengthy, and Court has sat through the trial, if I may

24    summarize the facts?

25          THE COURT:  That would be fine.  Is it based on the

1    factual basis attached?

2            MS. GARDES:  Exactly.  Rather than the read the whole

3    thing, a brief outline of what the Government would show as

4    agreed to in the factual basis attached to the plea agreement.

5            THE COURT:  So, Ms. Tolentino, Mr. Tolentino, please

6    listen carefully.

7            DEFENDANT FLORITA TOLENTINO:  I'm sorry?

8            DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

9            MR. ABRAHAM:  Thank you.

10            THE COURT:  Ready?

11            MS. GARDES:  In this case, Your Honor, should the

12    matter have proceeded to trial, the Government would show that

13    sometime prior to January 31, 2002, the defendants, through

14    their companies, Omni, which is OmniConsortium, Multicultural

15    Professionals, and Multicultural Education Consultants, came up

16    with the plan to bring Philippine teachers to teach in Texas,

17    on or about January 31, 2002.  The first trip from Brownsville

18    Independent School District concluded with letters of intent to

19    employ 55 teachers being issued.

20            On March 19, 2002, defendant, Florita Cedro Tolentino,

21    sent a letter to BISD, Brownsville Independent School District,

22    confirming no teachers would leave the Philippines unless and

23    until there was a specific job assignment.

24            On May 21st, the Board of Trustees met and confirmed

25    hiring of 15 teachers, but a letter dated July 2, 2002,

1    informed the defendants no jobs for them -- the remaining

2    teachers were guaranteed.

3            On or about July 8, 2002, the BISD sent a letter to

4    Omni, indicated 16 specific teachers approved and hired, the

5    remainder would not be hired.  Subsequently, three more

6    teachers were, in fact, hired.

7            On or about July 16, 2002, the defendant, Florita

8    Tolentino, directed staff members at MEC in the Philippines to

9    manufacture contracts for all 54 teachers who were originally

10   given letters of intent to employ.  Between July 22nd and

11   August 1st, defendant, Florita Tolentino, delivered the visa

12   application packets to the United States embassy in Manila in

13   order to secure H1B visas for entry into the United States for

14   all 54 teachers.  Between August 2nd and August 10, 2002, 37

15   non-hired teachers arrived in the United States utilizing the

16   H1B visa acquired, were met by Noel Cedro Tolentino and brought

17   to El Paso, Texas, which is within the Western District of

18   Texas.

19           On or about November 24, 2002, a similar trip by

20   Ysleta School District took place where YISD issued 53 letters

21   of intent to teachers.  Subsequently, on January 29, 2003,

22   defendant, Noel Tolentino, wrote to administration at YISD and

23   indicated the language used in their letter of intent needed to

24   be changed because the one used might cause problems at CIS,

25   which is Citizenship and Immigrant Service, a division of the

1    Department of Homeland Security.

2            On April 25, 2003, YISD administrators met with both

3    defendants, at which time the defendants were informed that

4    YISD would not be hiring the teachers.  At that time Noel Cedro

5    Tolentino gave YISD verbal assurances the teachers would not

6    leave the Philippines without confirmed employment.  However,

7    YISD administration continued to sign and complete I-129

8    petitions in case the teachers would be hired.

9            Between May 6th and June 10th, staff members at Omni,

10   directed by Noel Tolentino, filed I-129 petitions with CIS for

11   teachers without confirmed employment.

12           On July 14th YISD administrators sent written

13   cancellation for all but two teachers.  After that time

14   defendant, Florita Cedro Tolentino, sent at least nine teachers

15   to the U.S. Embassy in Manila to secure visas and canceled

16   letters of intent.  And between July 20, 2003, and August 12,

17   2003, 44 teachers without employment entered the United States

18   on such visas.

19           In Socorro, on December 8th and March 16th, Socorro

20   Independent School District administrators took trips to the

21   Philippines, which concluded with 66 letters of intent, between

22   the two trips, being issued.  While on the second trip the

23   interim superintendent was fired.  On April 16th, the new

24   interim superintendent directed another assistant administrator

25   to inform Noel Tolentino the Philippine teacher program had

1 been canceled and no teachers would be needed, except for five

2 specific teachers.

3     On April 25, 2003, defendant sent correspondence to

4 SISD indicating he understood the need to hire local teachers.

5 Despite that, SISD administrators continued to complete I-129s

6 for filing so that the teachers would be ready to come to the

7 United States if circumstances changed. These I-129 petitions

8 were filed between April 24th and June 6, 2003.

9     After receiving written notification on or about May

10 14, 2003 that SISD would hire only five specific teachers and

11 no others, defendant, Florita Tolentino, directed MEC staff to

12 create fraudulent employment letters on SISD letterhead for

13 each of the 59 teachers previously given letters of intent by

14 SISD. These fraudulent employment letters were included in

15 packets of information submitted to the United States Embassy

16 in support of the teachers' application for H1B visas.

17     Between May 29, 2003 and July 29, 2003, SISD teachers

18 applied for and received H1B visas based on these employment

19 letters. Between June 16, 2003 and August 1, 2003, the

20 teachers entered the United States on said visas.

21     In El Paso Independent School District January 26,

22 2003, administrators went and issued contracts, not letters of

23 intent. Subsequently, on June 23rd, an EPISD administrator

24 sent Omni written notice canceling three of the alien teachers'

25 contracts. Between July 7, 2003 and July 15, 2003, at the

1    direction of the defendants, these three alien teachers applied

2    for and received H1B visas based on canceled contracts they

3    entered on August 13, 2003.

4           Finally, in South San Antonio School District on

5    February 26, 2003, defendant, Noel Tolentino, gave a

6    presentation to the board of trustees in which he indicated

7    there was no application to hire any Filipino teachers, and the

8    19 petitions needed to be filed in order to bring the alien

9    teachers into the United States to interview for a job.  In

10   April of 2003 South San Antonio issued letters of intent to 21

11   alien teachers.

12          Between June 6, 2003 and June 26, 2003, H1B visas were

13   applied for and issued to the 21 teachers based on letters of

14   intent.  On July 28, 2003, the teachers entered the United

15   States on these visas but only two teachers were hired.

16   Defendants, Florita Cedro Tolentino and Noel Cedro Tolentino,

17   now admit they conspired to defraud the United States and its

18   agencies, the Department of Homeland Security and Bureau of

19   Citizenship and Immigrant Services and the Department of State,

20   by failing to tell them the alien teachers did not have

21   confirmed employment.

22          Those would be the facts.

23          THE COURT:  All right.  Ms. Tolentino, did you hear

24   everything Ms. Gardes told the Court?

25          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

1      THE COURT:  Is there anything in that summary that you

2  disagree with, that you think is incorrect?

3      DEFENDANT FLORITA TOLENTINO:  I have some notes about

4  the dates.

5      MR. ABRAHAM:  May I confer?

6      THE COURT:  Sure.  While she's reviewing that,

7  Mr. Tolentino, is the summary that Ms. Gardes gave me correct

8  in your case?

9      DEFENDANT NOEL TOLENTINO:  No, ma'am.

10     THE COURT:  Okay.

11     DEFENDANT NOEL TOLENTINO:  I had problems when I read

12 it.

13     THE COURT:  What do you want to correct?

14     DEFENDANT NOEL TOLENTINO:  Well, I --

15     THE COURT:  Do you want to talk about it?

16     MR. VELARDE:  Go ahead.

17     DEFENDANT NOEL TOLENTINO:  Okay.  If I'm going to do

18 this, I may make comments on the accuracy of the factual basis.

19 On the second page on -- under Brownsville, Page 11 --

20     THE COURT:  Okay.

21     DEFENDANT NOEL TOLENTINO:  May 21, 2002, the BISD

22 board of trustees met and confirmed the hiring of 15 teachers

23 for the district.  That's not true.  They hired 55.  And I

24 believe that prosecutors know that fact.

25     THE COURT:  So instead of 15 that should say 55.

1    DEFENDANT NOEL TOLENTINO:  Yes.  All those that went

2  to the Philippines to hire were approved by the board.  That

3  was common knowledge.  People in the office, as well as Nieda

4  Ruth Soto, who could not remember that fact, could not even

5  remember if she was at the meeting.

6    THE COURT:  We could try the case over again.  Just

7  tell me what you're trying to correct.  So instead of saying 15

8  it should say 55.

9    DEFENDANT NOEL TOLENTINO:  Yes.

10    MR. VELARDE:  Judge, in the interest of, I guess, a

11  better understanding, I would ask the Court to please allow for

12  me to visit with Mr. Tolentino before he proceed into more

13  detail.

14    THE COURT:  Sure.

15    (Attorney and client conferring.)

16    THE COURT:  Ms. Tolentino has conferred.

17    MR. ABRAHAM:  Basically, Your Honor, the factual basis

18  that has been read to the Court by Ms. Gardes is basically

19  true.

20    THE COURT:  All right.

21    MR. ABRAHAM:  There are no corrections we want to make

22  at this juncture.

23    THE COURT:  All right.  So then as your attorney has

24  indicated, there are no corrections you wish to make to this

25  factual basis; is that correct?

1          DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

2          THE COURT:  We will wait for Mr. Tolentino to go

3   through his.

4          MR. ABRAHAM:  May Ms. Tolentino be seated, Your Honor?

5          THE COURT:  Sure.  Until we're ready.

6          MS. GARDES:  Perhaps we could speed this along by

7   clarifying this to the defendant that is what the Government

8   believes it can prove.  That, additionally, and especially in

9   light of the Brownsville, we have a board of trustees member

10  that was at that meeting that would be testifying in this

11  trial, a Pat Leman, who would testify it was 15.  That's where

12  that statement comes from.

13         THE COURT:  Gotcha.

14         DEFENDANT NOEL TOLENTINO:  Your Honor, I don't know

15  what procedures are for this kind of --

16         MR. VELARDE:  Tell the judge.

17         DEFENDANT NOEL TOLENTINO:  If -- I need to be honest

18  and tell you what my version of the factual basis where I give

19  my comments on this thing.  So, um --

20         THE COURT:  So you told me about the 55.  What else

21  did you want to correct?

22         DEFENDANT NOEL TOLENTINO:  That evidence exists, Your

23  Honor, in the vault of BISD that there were 55, anyway.  Ysleta

24  Independent School District, on the second paragraph, just

25  explaining that the letter of intent needed to be changed

1   because they were recruiting some teachers.  And it needed to

2   be something stronger than a letter of intent because they

3   needed them for the winter term.

4          The third paragraph, April 25th, I truthfully say that

5   meeting never existed, never occurred.  I was not there.

6   Martha Dominguez, in the first trial testified that she doesn't

7   remember me being there.  And I have a Visa receipt being in

8   Houston eating at Papasitos on that date.  And --

9          THE COURT:  So you deny being at this meeting?

10         DEFENDANT NOEL TOLENTINO:  The fourth paragraph

11  between May 6th and June 10th, staff members at Omni directed

12  by defendant Noel Cedro Tolentino filed -- I have never

13  instructed anybody at Omni to file an I-129 petition in my

14  whole entire life.

15         THE COURT:  So you deny that paragraph; is that

16  correct?

17         DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

18         THE COURT:  Go ahead.

19         DEFENDANT NOEL TOLENTINO:  Socorro Independent School

20  District, third paragraph, April 16, 2003, SISD administrator

21  informed defendant, Noel Cedro Tolentino, that the new interim

22  superintendent canceled Philippine teacher program and no

23  teachers needed -- it's just the first sentence.

24         THE COURT:  Slow down.  This gentlemen still has to

25  take down what you said --

1   DEFENDANT NOEL TOLENTINO:  The first sentence of the

2 third paragraph ending with "except for five specific

3 teachers".  Also, that is not true.  We may have had a meeting

4 April 16th, but Mr. Bustamante said to me "I'm going to do the

5 right thing.  And I'm going to -- you know, my job's in

6 jeopardy here.  But we want these teachers.  And in spite of

7 all the politics over here, I'm going to, you know, help these

8 teachers find positions."  That was what he said to me.

9   He did not tell me about five specific teachers on

10 April 16th.  As a matter of fact, the first time I heard of the

11 five specific teachers was when he visited with the teachers

12 when we were at Holiday Inn and he met with the teachers twice,

13 not once, as he admitted in court.  Twice on the second meeting

14 he said, "I have here a list of five teachers that, you know,

15 we're processing right now."  And he gave me the piece of paper

16 and I read the names.  That is the truth.

17   THE COURT:  All right.

18   DEFENDANT NOEL TOLENTINO:  April 25th defendant, Noel

19 Cedro Tolentino, said correspondence to SISD administrator

20 indicating he understood SISD's need to hire local teachers.

21 He asked me to write that letter, Your Honor.  His job was in

22 jeopardy and he specifically asked me to write what you would

23 call a "CYA" letter, you know.  Because he said "I don't want

24 anybody suing us.  I don't want, you know -- being in trouble

25 because of this." The new administration does not -- did not

1  like Mr. Aguilar and so-on-and-so-forth.

2       On the fourth paragraph it says, "After receiving

3  written notification on or about May 14, 2003, that SISD would

4  hire only five specific teachers and no others."  I can say

5  this, that in the first trial, Pablo testified he never saw

6  that letter and we didn't know about it.  On -- the first time

7  we heard about the five teachers was two days after the

8  teachers arrived.  They arrived on June 15th or 16th.  We

9  received a letter from the clerk.  That is the first one to

10  know who's hired on the 18th.

11       THE COURT:  Let me ask a question, on this one it

12  doesn't talk about you.  It talks about Florita.  My concern is

13  with correction -- I don't know what Ms. Tolentino knew.  And

14  I'm not so sure I'm going to allow you to tell me what she

15  knew.

16       DEFENDANT NOEL TOLENTINO:  Yes, ma'am, I agree.

17       Page 13, El Paso Independent School District, on June

18  23, 2003 EPISD administrator sent Omni written notice canceling

19  three of the alien teachers' contracts.  There were actually

20  five, if I may add, it was at my direction.

21       She was the first one to call me.  And she said,

22  "Noel -- it was Nancy Evans.  She said, "Noel, I'm not going to

23  need the English teachers.  What do I do?"  And I made a

24  comment and said to Ms. Evans, "Well, you need to write the

25  teachers, for sure write INS, and call Pablo or Rory at the

1    office.  They will know what to do."

2           And the second paragraph of El Paso ISD, between July

3    7th and 15th, at the direction of the defendants, these three

4    alien teachers applied and received H1B visas based on now

5    canceled contracts.  That is absolutely not true for myself.  I

6    actually met with these three alien teachers that were given

7    canceled notices in the Philippines.  We had -- we had what's

8    called a in-service.  It was a big celebration ready to go to

9    the United States of America.

10          They were informed that they were rejected by El Paso

11   ISD.  They came to me at the end of the day and made their

12   appeal to say, could you call someone, Marcia Brown, changed

13   their mind.  And I said, "I will tell you what, you're on the

14   front of the list for English teachers for next year.  But

15   you're not going this year."

16          That's what I told those three.  That is the truth.

17          South San Antonio, first paragraph, second sentence,

18   in that presentation he assured the board there was no

19   obligation to hire the Philippine teachers and the I-129

20   petitions needed to be filed in order to bring the alien

21   teachers into the United States to interview for a job.  That

22   is a misstatement of what I said.  We have the evidence -- I

23   heard it again.  They always ask, what do we do when we get 20

24   teachers or ten teachers and maybe one or two are not hired by

25   campus principals because of the way they dress or style?  And

1    that's when I say, "Give them to me.  They're always schools

2    down in the Valley that need math, science and special ed

3    teachers."  But no -- I would never say -- and I did not in

4    this particular instance say that just go hire teachers you

5    have no obligation to hire.

6              So I -- that's a misstatement.

7              THE COURT:  All right.

8              DEFENDANT NOEL TOLENTINO:  Third paragraph, third

9    sentence, on July 28, 2003, the teachers entered the United

10   States on the SSA sponsored visas.  Only two teachers were

11   hired by South San Antonio Independent School District.  I can

12   only say that I was there myself when I heard Ms. Woodard say

13   "I wish you all arrived a week earlier because all of you would

14   have been hired.  And our principals panicked and they just got

15   permanent substitutes."  But that's the reason why they hired

16   20 out of the Philippines and picked up two in the U.S.

17             It was just -- they were just late.  It's not that

18   they didn't want the 20.  It's not that -- I mean, why would

19   they write I-129s for 20 if they needed less than that?  That's

20   all.

21             THE COURT:  All right.  Mr. Tolentino -- and the Court

22   has noted where you have made those clarifications or, in some

23   cases, denials.  You understand that you are here to enter a

24   plea to the offense of conspiracy to defraud the United States.

25   I've gone over with you what the elements of the conspiracy

1  are.  Now, as you know, because we sat through a five week

2  trial, there is much disputed about -- even between different

3  witnesses about the exact dates, the exact facts, et cetera.

4  But in order for this Court to be able to take a plea, I have

5  to make sure you understand that you are pleaing to the offense

6  of conspiracy to defraud the United States.  It doesn't

7  necessarily mean you agree with every ounce of that factual

8  basis.  That's what they believe they can prove if they were to

9  go to trial.  I want to make sure you understand what you're

10 pleaing to.

11        So with that clarification, is it still your intent to

12 plea to conspiracy to defraud the Government?

13        DEFENDANT NOEL TOLENTINO:  The plea, Your Honor, is

14 the last paragraph of page 13, which is to say that Noel

15 Tolentino now admits that he defrauded the United States and

16 its agencies by failing to tell them the alien teachers did not

17 have confirmed appointments, I wouldn't disagree with that --

18        THE COURT:  Let me clarify.  You're not pleaing to the

19 factual basis.  You're pleaing to the indictment, which are the

20 elements I went over with you previously that there had been an

21 agreement to commit the crime of defrauding the Government,

22 that -- parties to that conspiracy, and that some -- one of the

23 conspirators did a positive step to have that overt act alleged

24 in your indictment.  In just a minute I'm going to read the

25 indictment.  You're not pleaing to the factual basis.  You're

1    pleading to the indictment.

2            DEFENDANT NOEL TOLENTINO:  I would agree with that

3    then.

4            THE COURT:  You want to proceed?

5            DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

6            THE COURT:  With those clarifications -- because you

7    dispute some of the information in that factual basis?

8            DEFENDANT NOEL TOLENTINO:  Absolutely.

9            THE COURT:  All right.  So noted for the record.

10           Any clarifications from the Government?

11           MS. GARDES:  For the purposes of the record, it's

12   minor.  But just so there is a record, as I said, Pat Leman,

13   who's a Brownsville board member, would testify in a new trial

14   that only 15 teachers were confirmed on May 21st, 22nd.  Martha

15   Dominguez and Raye Lokey would be testifying to the meeting on

16   or about April 25th, may have been the 24th.  Pablo would

17   testify, in fact, the defendant did direct him to file the

18   Ysleta I-129s.  And that Bustamante would testify that he told

19   Mr. Tolentino that the new interim superintendent canceled the

20   Philippine program.  Elen Nakpil would testify she had a

21   confrontation prior to leaving the Philippines with this

22   defendant, Mr. Tolentino, that he knew she had no employment

23   and to come on down, he would find her a job.  And as far as

24   South San Antonio, what is put in the factual basis is a

25   summary of what was said.

1      There is a tape and transcript that has been

2  previously entered in the prior trial for any dispute as to

3  what was said.

4      THE COURT:  So noted, again, for the record.

5      At this time Ms. Tolentino, Mr. Tolentino, the Court

6  is going to read Count I of your indictment and each of you

7  will need to enter your plea.  So please listen carefully.

8      The United States of America versus Omni Consortium,

9  Inc., Multicultural Professionals, Multicultural Educational

10  Consultants, Florita Cedro Tolentino, Noel Cedro Tolentino, and

11  Angelica Tolentino, the grand jury charges Count I, beginning

12  on or about July 8, 2002 and continuing to on or about April

13  28, 2005, in the Western District of Texas, the Southern

14  District of Texas and within the special extraterritorial

15  jurisdiction of the United States, and elsewhere, defendants

16  Omni Consortium, Inc., Multicultural Professionals,

17  Multicultural Educational Consultants, Florita Cedro Tolentino,

18  Noel Cedro Tolentino, and Angelica Tolentino, knowingly,

19  conspired, combined, confederated, and agreed together, and

20  with each other, and with others known, but not indicated

21  herein, and others unknown to the grand jury, to defraud the

22  United States and agencies thereof, to wit, the United States

23  Department of Homeland Security, and the United States

24  Department of State, and to utter and obtain visas, permits,

25  and other documents prescribed by statute and regulation for

1   entry into and as evidence of authorized stay and employment in

2   the United States, knowing it to have been procured by means of

3   false claim and statement, and otherwise, procured by fraud in,

4   violation of Title 18 United States Code, Section 1546.

5          To this offense, how did you wish to plea

6   Ms. Tolentino?

7          MR. VELARDE:  We weren't pleading guilty -- not to the

8   1546 --

9          THE COURT:  Just to the first part.  All right.

10         MR. VELARDE:  371.  We took an abundance of caution to

11  eliminate -- because it does not exist.  Any mention of visa

12  fraud or alien smuggling.  And what is reflected in the last

13  paragraph --

14         THE COURT:  It's a portion of Count I.

15         MR. VELARDE:  That is correct, a portion.

16         MS. GARDES:  That's correct.  It's a multi-object

17  conspiracy.  They are pleading to one object, but not the

18  other.  And I believe it is object one of the conspiracy.

19         THE COURT:  Okay.  So let me go through it again, just

20  to defraud the United States.

21         United States of America versus Omni Consortium Inc.,

22  Multicultural Professionals, Multicultural Educational

23  Consultants, Florita Cedro Tolentino, and Noel Cedro Tolentino,

24  and Angelica Tolentino, the grand jury charges, Count I, that

25  on or about -- I'm sorry.  Beginning on or about July 8, 2002

1  and continuing to on or about April 28, 2005, in the Western

2  District of Texas, the Southern District of Texas, and within

3  the special extraterritorial jurisdiction of the United States,

4  and elsewhere, defendants, Omni Consortium, Inc., Multicultural

5  Professionals, Multicultural Educational Consultants, Florita

6  Cedro Tolentino, Noel Cedro Tolentino, and Angelica Tolentino,

7  knowingly conspired, combined, confederated, and agreed

8  together, and with each other, and with others known, but not

9  indicted herein, and others unknown to the grand jury to

10  defraud the United States and agencies thereof, to wit, the

11  United States Department of Homeland Security, and the United

12  States Department of State.

13       To that violation, how did you wish to plea,

14  Ms. Tolentino?

15       DEFENDANT FLORITA TOLENTINO:  Guilty, I plead guilty.

16       THE COURT:  And, Mr. Tolentino?

17       DEFENDANT NOEL TOLENTINO:  I plead guilty.

18       THE COURT:  All right.  Ms. Tolentino, Mr. Noel

19  Tolentino, then based on the provided summary of the evidence,

20  and your individual pleas, the Court is going to make the

21  following findings:  The Court is going to find that each of

22  you are fully competent and capable of entering an informed

23  plea here this afternoon.  The Court is going to find that each

24  of you are aware of the nature of the charges against you and

25  the consequences of that plea.  The Court is going to find that

1    your individual pleas are knowing and voluntary pleas,

2    supported by an independent basis in fact that contains each

3    and every essential element of the offense.

4         I will accept your plea of guilty.  I will find you

5    each guilty of the offense to which the plea of guilty was

6    entered and enter a judgment of guilty in each of your cases.

7    As I said before, you will come back for sentencing.  A

8    probation officer has been assigned.  And that probation

9    officer will be preparing a report.

10        Before sentencing it is important that you go over

11   that report with your attorney.  And if there's anything in

12   that report that you disagree with, that you think is incorrect

13   or inaccurate information, you need to let your attorney know

14   that so that he can file the appropriate paperwork with me and

15   let me know that.  I want you to know in order to prepare the

16   report, its likely your probation officer will want to

17   interview you.

18        At that interview you are absolutely entitled to have

19   your attorney with you.  If you would like your attorney there

20   with you, let him know that, let your probation officer know

21   that so that they can coordinate a time.  The only other thing

22   I want to clarify before we end this plea is that as part of

23   that plea, you have agreed to forfeit certain items that were

24   listed.

25        Ms. Gardes, do you want to go over those items?

1    MS. GARDES:  Your Honor, at this time the Government

2    has the following assets in its possession to which we are

3    seeking forfeiture.  That is, a Wells Fargo Bank account

4    including any and all accumulated interests from the date of

5    seizure.  The account number ends in 5604.

6         Actually, it has a zero balance.  It was seized

7    though.  BankOne account and any and all accumulated interest,

8    which as of last week was $15,193.23.  The last four digits is

9    4406.

10        Bank of America account, any and all accumulated

11   interest, which of last week was approximately $6,963.69.  The

12   last four digits on that account are 9242.

13        A Bank of America account, and any and all accumulated

14   interest, which is approximately $30,056.34.  The last four

15   digits 2764.

16        A United Central Bank account, and any and all

17   accumulated interest of, approximately, $33.96.  The last four

18   digits, 6392.  And the net proceeds and interest therefrom on

19   the interlocutory sale, which the Court previously had ordered

20   of real report located at 708 Kuhlman Houston, Texas.  The net

21   proceeds are, approximately, $202,873.94, after paying off all

22   tax liens and all back mortgage payments due and owing at the

23   time of the sale.

24        Those would be the assets the Government will forfeit.

25        THE COURT:  You understand that's part of your plea

1   agreement?

2         DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

3         THE COURT:  And you acknowledge that at this time?

4         DEFENDANT FLORITA TOLENTINO:  Yes, ma'am.

5         THE COURT:  And, Mr. Tolentino, you agree that's part

6   of your agreement?

7         DEFENDANT NOEL TOLENTINO:  Yes, I do.

8         THE COURT:  And you acknowledge it?

9         DEFENDANT NOEL TOLENTINO:  Yes, ma'am.

10         THE COURT:  Anything further on behalf of the

11   Government as to these two cases?

12         MS. GARDES:  No, Your Honor.

13         THE COURT:  Anything, Mr. Abraham?

14         MR. ABRAHAM:  No, Your Honor.

15         THE COURT:  Mr. Velarde?

16         MR. VELARDE:  No, Your Honor.

17         THE COURT:  Your sentencing date then is March 19th,

18   9:00 in the morning for both.

19         MR. ISLAS:  Your Honor, Luis Islas, who's here with

20   Angelica Tolentino.  I have been given, by Ms. Gardes, a

21   petition to adjudicate interest in property and consent to

22   final criminal forfeiture for my client, Angelica Tolentino, to

23   sign.  There is one paragraph that I requested Ms. Gardes to

24   remove from the petition.  But I thought it prudent if I would

25   stand here right now and assure the Court that my client has

1    agreed not to contest the forfeiture of those assets that were

2    set forth by Ms. Gardes just a few minutes ago at this plea.  I

3    wanted to state that for the record.

4            THE COURT:  Does she have any problem with

5    acknowledging that on the record?  Then she can sign the

6    report.

7            DEFENDANT ANGELICA TOLENTINO:  Your Honor, your

8    question?

9            THE COURT:  Do you have any problems with just

10   acknowledging that on the record, saying --

11           DEFENDANT ANGELICA TOLENTINO:  I acknowledge that --

12   what he said.

13           THE COURT:  All right.  So noted on the record.

14           Let me ask Ms. Gardes because we have the jury being

15   notified tonight whether or not they need to come in for

16   Friday.  Where does that put it including for the record, would

17   you let me know what then is the intent of the --

18           MS. GARDES:  The Government would move for a

19   continuance on the case of Ms. Angelica Tolentino as the case

20   is going to be dismissed at the time of sentencing against her

21   under the terms of the plea agreement.

22           THE COURT:  Okay.

23           MS. GARDES:  As for the corporate defendants, those

24   summonses are still sitting at the Texas Department of State.

25   So, I guess, to be on the safe side, we would be dismissing,

1  move for a continuance until March 19th.

2      THE COURT:  So it would be your intention then to

3  dismiss as to all the --

4      MS. GARDES:  Remaining defendants.

5      THE COURT:  Except for these two.  And you would move

6  for dismissals at the time of sentencing.  But you're asking

7  for continuances?

8      MS. GARDES:  That's correct, Your Honor.

9      THE COURT:  Mr. Islas, this is your client's speedy

10  trial right.  I need to make sure you're in agreement with that

11  continuance.

12      MR. ISLAS:  I don't object to the direction we're

13  going.  I would have to be crazy.  I have been known to be

14  crazy, but not this time.

15      THE COURT:  Based on that, the Court will grant the

16  continuance as to Angelica Tolentino, and the other defendants

17  pending the agreement.  And as I've said to you both, should

18  the Court not follow the plea agreement, then I will allow you

19  to withdraw.

20      MS. GARDES:  With speedy trial waived as between now

21  and March 19th.

22      THE COURT:  That's correct.  That's indicative by his

23  agreement.

24      MR. VELARDE:  Thank you.

25      THE COURT:  Let me say to everyone, I know this has

1    been a hotly contested case for many.  I appreciate all of your

2    hard work in this case.  And I want to say I know many of you

3    spent the entire vacation trying to get this resolved.  I

4    appreciate all the hard work.

5              (Recess.)

6

7

8

9

10

11

12

13

14

15

16

17                        *  *  *  *  *  *

18            I certify that the foregoing is a correct transcript

19   from the record of proceedings in the above-entitled matter.  I

20   further certify that the transcript fees and format comply with

21   those prescribed by the Court and the Judicial Conference of

22   the United States.

23

24   Signature:/s/_____Date:  March 14, 2008
                  David A. Perez, CSR, RPR
25

David A. Perez, CSR, RPR